IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Johnny Gagum, | ) | Civil Action No. 4:11-70033-TLW |
| | ) | Cr. No. 4:09-852 |
| Petitioner, | ) | |
| vs. | ) | ORDER |
| The United States of America, | ) | |
| Respondent. | ) | |

This matter comes before the Court for consideration of the pro se motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 filed by the Petitioner, Johnny Gagum (hereinafter "Petitioner" or "Defendant").

On July 28, 2009, a federal grand jury returned a two count indictment against Petitioner charging him with one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 924(e); and one count of possession of cocaine, a quantity of hydrocodone, a quantity of oxycodone, and a quantity of zolpidem, in violation of 21 U.S.C. § 844(a). (Doc. # 2). On February 10, 2010, Petitioner entered a plea of guilty to count one of the Indictment, which charged him with being a felon in possession. (Docs. # 48 & # 49). On June 22, 2010, the district court sentenced Petitioner to a term of imprisonment of 115 months with judgment entered on June 25, 2010. (Doc. # 56). Petitioner did not file a direct appeal. On February 7, 2011, Petitioner, proceeding pro se, filed the current motion under 28 U.S.C. § 2255 asserting a number of grounds for relief. (Doc. # 60). On March 24, 2011, the Government filed a motion for summary judgment and a supporting memorandum in opposition to Petitioner's petition. (Docs. # 70 & # 71).

1

Included as an attachment to the Government's motion for summary judgment is an affidavit from Petitioner's defense counsel, Attorney William F. Nettles, IV. Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Petitioner was advised by Order filed March 25, 2011 that he had thirty-four days to file any material in opposition to the Government's motion. (Doc. # 72). Petitioner filed a response in opposition to the Government's motion on May 19, 2011. (Doc. # 79). On July 19, 2012, Petitioner filed to motion to amend his § 2255 Petition to add an additional claim. This motion is granted (Doc. # 81), as the Court has considered all claims raised by Petitioner. The matter is now ripe for decision.[1]

## 28 U.S.C. § 2255

Title 28, Section 2255 of the United States Code provides that a prisoner in custody under sentence of a federal court may file a motion in the Court which imposed the sentence to vacate, set aside, or correct the sentence. The statute states four grounds upon which such relief may be claimed: (1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law, and (4) that the sentence is otherwise subject to collateral attack. 28 U.S.C.A. § 2255. "Generally, 28 U.S.C. § 2255 requires [a] petitioner to prove by a preponderance of the evidence that 'the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or

---

[1]The Court notes that Petitioner has filed a motion for discovery (Doc. # 65) and also requests discovery in his Motion to Supplement (Doc. # 74). Rule 6(a) of the Rules Governing Section 2255 Proceedings states, "A judge may, for good cause, authorize a party to conduct discovery ...." After careful review and consideration, the Court is not persuaded to grant this request. Accordingly, Petitioner's motions for discovery (Doc. # 65 & Doc. # 74) are hereby **DENIED**.

2

that the sentence was in excess of the maximum authorized by law.'" Leano v. United States, 334 F. Supp. 2d 885, 890 (D.S.C. 2004). In Leano, the District Court noted that this is "the proof needed to allege a constitutional error," and that "[t]he scope of review of non-constitutional error is more limited than that of constitutional error; a non-constitutional error does not provide a basis for collateral attack unless it involves 'a fundamental defect which inherently results in a complete miscarriage of justice,' or is 'inconsistent with the rudimentary demands of fair procedure.'" Leano, 334 F. Supp. 2d at 890 (quoting United States v. Mikalajunas, 186 F.3d 490, 495-96 (4th Cir. 1999)). In deciding a 28 U.S.C. § 2255 motion, the Court need not hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. The Court has thoroughly reviewed the motions, files, and records in this case, liberally construing Petitioner's pro se motion, and finds that no hearing is necessary.[2]

## STANDARD OF REVIEW

The Government has moved for summary judgment as to all grounds raised by Petitioner. (Doc. # 70). In examining a motion for summary judgment, the Court must determine whether there exists a genuine issue of material fact. Fed. R. Civ. P. 56. Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of genuine issues of material fact. Celotex Corporation v. Catrett, 477 U.S. 317, 323; see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249. Though this initial responsibility rests with the

---

[2]The Court having found no hearing is necessary, Petitioner's motion for evidentiary hearing (Doc. # 61) is hereby **DENIED**. Petitioner's request for an evidentiary hearing contained in his Motion to Supplement (Doc.# 74) is likewise **DENIED**.

moving party, when a motion for summary judgment is made and supported as provided in Rule 56, the non-moving party must produce "specific facts showing that there is a genuine issue for trial," rather than resting upon bald assertions contained in the pleadings. See Celotex, 477 U.S. at 324. Thus, the plain language of Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue of material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the

non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. Celotex, 477 U.S. at 322-23 (1986).

## **DISCUSSION**

Petitioner asserts a number of grounds for relief, all of which are based upon a theory of ineffective assistance counsel. (Docs. # 60 & # 81). Petitioner's ineffective assistance of counsel argument includes allegations that his counsel failed (1) to pursue to a motion to suppress; (2) to object to the calculation of his criminal history points;[3] (3) to object to the four level enhancement for possessing the firearm in connection with another felony drug possession; (4) to object to the two-level enhancement for possession of a stolen firearm; (5) to object to the loss of acceptance of responsibility; and (6) to move to dismiss the indictment.

---

[3]The claim for relief that Petitioner asserts in his motion to amend is related to this same conviction for strong arm robbery. This claim for relief is addressed, infra.

4

In order to prevail on a claim of ineffective assistance of counsel, a defendant must prove two things: one, that counsel's performance fell below an objective standard of reasonableness; and two, that counsel's deficiencies prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687-692, 104 S.Ct. 2052, 2063-67 (1984). A defendant asserting an ineffective assistance of counsel claim must satisfy both prongs, and a failure of proof on either prong ends the matter. U.S. v. Roane, 378 F.3d 382, 404 (4th Cir. 2004) (citing Williams v. Kelly, 816 F.2d 939, 946-47 (4th Cir.1987)).

Under the first prong of Strickland, we apply a "strong presumption" that a trial counsel's strategy and tactics fall "within the wide range of reasonable professional assistance." Id. (citing Strickland, 466 U.S. at 689). For a lawyer's trial performance to be deficient, his errors must have been so serious that he was not "functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. (citing Strickland at 687). The reasonableness of a lawyer's trial performance must be "evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of reasonableness is highly deferential." Id. (citing Kimmelman v. Morrison, 477 U.S. 365, 381 (1986); Strickland, 466 U.S. at 689).

In order to establish prejudice under Strickland 's second prong, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. In the context of a guilty plea, the prejudice prong is satisfied where there "is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). The first inquiry--whether counsel's performance was deficient

-- may be by-passed if the claim is more easily disposed on the ground of lack of prejudice. Strickland, 466 U.S. at 697.

The reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Further, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Id. at 689. As the Strickland Court observed:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

Id. at 689. (Citations omitted).

In examining Petitioner's first ground for relief, the Court finds it appropriate to note some of the relevant facts from the underlying offense conduct before examining the legal merit of the claim for relief. On December 23, 2008, the Horry County Police Department conducted a traffic checkpoint. See Pre-sentence Investigation Report (hereinafter the "PSI") ¶¶ 10-12. Petitioner was stopped at the checkpoint and provided police with a driver's license belonging to another individual. Id. Officers then arrested Petitioner for giving false information to a police officer. Officers then asked Petitioner if he had any illegal items on him before they conducted a pat down search of him. Id. Petitioner stated that he had something in his pocket. Id. Police then removed a bag from Petitioner's bag that contained approximately seven grams of cocaine. Id. Subsequently, officers searched Petitioner's vehicle. During the search they recovered a loaded Smith and Wesson pistol, pills, marijuana, and three straws with cocaine residue. Id.

Petitioner contends that this attorney erred by not moving to suppress the firearm found in the car under Arizona v. Gant, 129 S. Ct. 1710 (2009). The Government asserts that any motion to suppress filed would have been frivolous. After review and consideration, and in light of the applicable case law, the Court finds the Government's position to be sufficiently persuasive.

Contrary to Petitioner's allegations, the Supreme Court's decision in Gant provides no relief to Petitioner. In Gant, the Supreme Court held that a search of a vehicle's passenger compartment is permissible incident to the arrest of the occupant where either (a) the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search or (b) the officer has reason to believe that the vehicle contains evidence of the offense of arrest. Id. In the present case, Horry County Police arrested Petitioner for giving false information to a police officer. Subsequently, the police patted down Petitioner and found a quantity of cocaine in Petitioner's pocket. Based on the cocaine possession, police searched the passenger compartment of the car. This was a valid search post-Gant because the police had reason to believe that the passenger compartment would contain additional drug evidence - which it did.

The Court notes that in his affidavit, defense counsel William F. Nettles, IV, addresses this issue as follows:

> First, Mr. Gagum claims that I was ineffective for not pursuing a suppression of evidence motion under Arizona v. Gant. As the record will reflect, during Mr. Gagum's first plea hearing, I requested, midway through the plea, that the court adjourn the plea hearing to allow me to consult with my client. I recognized that I had missed an issue. That issue was the Arizona v. Gant issue that Mr. Gagum claims I was ineffective for failing to pursue. After the court granted my request to adjourn the plea hearing, I consulted with Mr. Gagum about this issue. My calender reflects that the plea hearing on January 6, 2010 was the plea hearing that was adjourned. My notes reflect that I spoke with Mr. Gagum about this matter on January 12, 2010, going into detail regarding the facts of the stop. Those notes reflect that the defendant was driving his high school age son to football practice. The police had fashioned a traffic checkpoint on the route to practice. When Gagum came upon the road

block, the car engine, in need of a tune-up, revved and the car "rolled up fast," making it appear the individuals in the car were trying to "run." The policemen at the scene "rushed" the car. They told Gagum to pull the car off of the road. At this point, it appears the policemen asked for his driver's license and registration. Gagum gave the police a "bogus" license and asked his son to reach in the glove box for the registration. According to Gagum, the policemen "pulled" him out of the car before the policemen "ran" his license. My notes indicate to me that a policeman asked Gagum if he had anything in his pockets. Gagum indicated to me that Gagum motioned in a way to indicate, "Damn." When I heard that I took that gesture to mean that Gagum was indicating to the police that they had caught him with something. My next note is puzzling. It states: "Cops reached in car and pulled coke out of pocket." At this point I do not recall if Gagum told me that the policeman reached in the car for the coke, or if the policeman reached into Gagum's pocket. After reviewing the discovery, it is clear to me that the policeman reached into Gagum's pocket. I think that is what Gagum told me because Gagum's son was still I the car. Later my notes reflect that Gagum told me that the police took his son out of the car after finding the cocaine in Gagum's pocket. Based thereon, I would say that Gagum told me the police got the cocaine from his pocket, not the car, which is probably a misprint in my earlier notations. After finding the drugs on the defendant and removing his son from the car, the police then a) moved the car and began searching it; or, b) having already moved the car, began searching it. At one point Gagum advised me that the police asked him if he had anything in the car before moving the car and Gagum said nothing.

My recollection of my thinking in January 2010 was that this stop was not a "pure" <u>Arizona v. Gant</u> situation in that the arrest may have been made in this case prior to the search, but there was reason to believe that other evidence of the crime (the drug offense) might be in the car. Unlike a driving under suspension charge, where a police officer has removed the driver and confirmed a suspended license, obviating the need for more evidence of that crime, here the crime of possession of cocaine could reasonably lead officers to believe that there might be more evidence of that offense within the car. In addition, there was another individual in the car, which was not registered to the defendant. Gagum's son did not have a license, and the car would have been towed, prompting police to do an inventory, where the gun would have been inevitably discovered. Before leaving that meeting, I recall discussing the Gant issue with Gagum, and concluding that the filing of a motion to suppress under <u>Arizona v. Gant</u> would be unavailing due to the unique facts of this case.

The discovery from the government indicates that police searched Gagum's person incident to arrest for giving false information to the police officer, and discovered the cocaine in Gagum's pocket. After that, the vehicle was searched.

See Doc. # 71, Exhibit 1 to the Government's memorandum in Support of Summary Judgment (Affidavit of William F. Nettles, IV).

Moreover, even if the police had not discovered the powder cocaine in Petitioner's pocket,

8

the police could validly performed an inventory search of the vehicle before it was towed. The Fourth Circuit has recently held:

> "A proper inventory search is merely an incidental administrative step following arrest and preceding incarceration, conducted to protect the arrestee from theft of his possessions, to protect the police from false accusations of theft, and to remove dangerous items from the arrestee prior to his jailing." United States v. Banks, 482 F.3d 733, 739 (4th Cir.2007) (internal citations and quotation marks omitted). An inventory search, however, must "be conducted according to standardized criteria," such as a uniform police department policy. Colorado v. Bertine, 479 U.S. 367, 374 n. 6, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). For an inventory search to be lawful, the vehicle searched must be in the lawful custody of the police. "If the vehicle is in lawful custody, the police may inventory the vehicle, if such inventories are routine and conducted pursuant to the standard police procedures, so long as the purpose of the inventory is to secure the car or its contents and not to gather incriminating evidence against the owner." United States v. Brown, 787 F.2d 929, 932 (4th Cir.1986).

See Wambach v. Powers, 2010 WL 3257706, 5 (D.S.C. 2010).

An inventory search also would have yielded the gun and drug evidence found in the passenger compartment of the vehicle.

In sum, this Court cannot conclude that defense counsel's decision not to pursue a suppression motion was inappropriate because there was no legal basis to suppress the gun and drugs. The search was a valid search incident to arrest and the doctrine of inevitable discovery applies when considering the necessary inventory search. See generally, U.S. v. Lynn, 592 F.3d 572 (2010).

Next, Petitioner contends that his attorney should have objected to the three criminal history points assigned to his Youthful Offender Act sentence for his strong armed robbery conviction. The Government asserts that PSI properly calculated Petitioner's criminal history points. The Court finds the Government's position to be sufficiently.

Contrary to Petitioner's suggestion, the PSR properly assigned three criminal history points

9

for Petitioner's conviction for Strong Armed Robbery in ¶ 28 of his PSI because he received an actual sentence of imprisonment not to exceed six years. Petitioner's argument that he served less than one year of actual imprisonment is irrelevant. The criminal history points are dictated by the pronounced sentence - not the actual amount of time served on any given conviction. See United States v. Levenite, 277 F.3d 454 (4th Cir. 2002); United States v. Holbert, (10th Cir. 2002). Application Note 2 to U.S.S.G. § 4A1.2 clearly provides that "criminal history points are based on the sentence pronounced, not the length of time actually served."

In his motion to amend (Doc. # 81), Petitioner also alleges that his counsel was ineffective for failing to object to the use of his strong arm robbery conviction because he received a YOA sentence. Petitioner initially appears to object because he asserts that he believes that it is merely a ministerial act to have this conviction expunged. However, Petitioner also acknowledges that this conviction does remain on his record, and offers no proof that it has been expunged. The possibility of expungement is not sufficient for purposes of U.S.S.G. 4A1.2(j).

Additionally, with regards to this conviction, Petitioner suggests that this conviction should not be counted as he was 17 at the time of imposition and that this is not an adult conviction under the Guidelines. Here, Petitioner was convicted and sentenced for strong arm robbery in the Court of General Sessions- an adult court. He received an indeterminate sentence not to exceed six years on this conviction. He was actually confined for a period of time. Based on these facts, the Court finds that Petitioner's conviction for strong arm robbery is an adult state conviction. Additionally regardless of the actual incarceration time, Defendant clearly received a sentence of imprisonment of more than one year and one month. Accordingly, for the reasons set forth above, the Court finds that Petitioner's conviction for strong arm robbery was appropriately assessed three criminal history

points. The Court also finds that this conviction was appropriately considered as a prior felony conviction for a crime of violence in determining Petitioner's base offense level under U.S.S.G. § 2k2.1(a)(4)(A).[4] The Court has reviewed these additional grounds for relief raised in Petitioner's motion to amend in light of the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984) and finds them to be without sufficient legal merit.

Petitioner's also alleges that his counsel was ineffective for failing to object to the four-level enhancement he received for his possession of the gun in connection with a felony drug offense. The Government argues that this enhancement was appropriately assessed pursuant to U.S.S.G. § 2K2.1(b)(6).

U.S.S.G. § 2K2.1(b)(6)(B) provides that if the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, the defendant's offense level should be increased by 4 levels. As noted in the PSI, Defendant had approximately seven grams of cocaine in his pocket and additional drugs were found in the car. Notably, the gun was also found in the car and was therefore in close proximity to the drugs and had the potential to provide Petitioner protection for his drugs or to "embolden" Petitioner. In United States v. Jenkins, 566 F.3d 160, 162 (4th Cir. 2009), the Fourth Circuit has noted that this 4 level enhancement requires only "another felony offense," and thus a drug possession offense is sufficient to support the enhancement when it constitutes a felony

---

[4]Application note 1 of U.S.S.G. § 2K2.1 indicates that the phrase "crime of violence" has the meaning given that term in U.S.S.G. § 4B1.2(a) and Application note 1 of the Commentary to U.S.S.G. § 4B1.2. The Court finds that this conviction meets the definition of a crime of violence as defined in the referenced sections.

11

under state law. *See* U.S.S.G. § 2K2.1 cmt. n. 14(C) (defining "another felony offense" as including any state offense "punishable by imprisonment for a term exceeding one year"). Furthermore, the Court noted that it is clear that the possession of a firearm can facilitate[5] a simple drug possession offense. Id. A firearm can embolden the actor to possess the drugs or provide the actor protection for himself and his drugs, which are likely to be personally valuable even in small amounts. Id. The possession of the cocaine and other drugs constituted a felony drug offense. Contrary to Petitioner's contention, the possession of seven grams of powder cocaine is punishable by more than one year in prison in the state of South Carolina. See S.C. Code Ann. § 44-53-370(d). Thus, the PSR properly applied the four level enhancement and the Court does not conclude that counsel was deficient for not objecting to the enhancement.

Next, Petitioner alleges his counsel was ineffective for not objecting to the two-level enhancement for possessing a stolen firearm. The Government argues that this enhancement pursuant to U.S.S.G. § 2K2.1(b)(4) is appropriate. After review and consideration, the Court finds the Government's argument to be sufficiently persuasive.

U.S.S.G. § 2K2.1(b)(4) provides that if any firearm was stolen, the offense level shall be increased by two levels. Petitioner contends that this two-level adjustment should not apply to him because he did not know the gun was stolen. Petitioner, however, acknowledges that U.S.S.G. § 2K2.1 application note 8 clearly states that the knowledge of the defendant is irrelevant. See Doc.

---

[5] Application note 14 to U.S.S.G. § 2k2.1 addresses the term "in connection with" as found in 2k2.1(b)(6). In subsection A, the application note provides that in general**,** Subsections (b)(6)(B) and (c)(1) apply if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense or another offense, respectively.

12

# 60-1, p. 6. This application note states that subsection (b)(4) applies regardless of whether the defendant knew or had reason to believe that the firearm was stolen or had an altered or obliterated serial number. See also United States v. Thomas, 628 F.3d 64 (2d Cir. 2010) (rejecting constitutional challenge to enhancement and noting "that the government has a legitimate interest in punishing possession of a stolen firearm and placing the burden upon one who receives a firearm to ensure that the possession is lawful" (internal quotation marks and alterations omitted)). The Court concludes that this enhancement was properly applied and that Petitioner's trial counsel was not ineffective for failing to object to the same.

Petitioner also asserts that his counsel was ineffective for not persuading the Court to award him a three level reduction for acceptance of responsibility. The Government asserts the Petitioner failed to demonstrate acceptance of responsibility. The Court finds that Petitioner was not entitled to acceptance of responsibility and there was no deficiency by counsel to fail to object to the same.

Petitioner lost the three levels of acceptance of responsibility because he violated the conditions of his bond by testing positive for cocaine and for failing to appear for a pretrial conference. Petitioner's own conduct resulted in his loss of the three levels for acceptance. See United States v. Williams, 398 Fed. Appx. 857 (4th Cir. 2010) (unpublished) (affirming denial of acceptance of responsibility for failed drug test); United States v. Cook, 341 Fed. Appx. 874 (4th Cir. 2009) (unpublished) (same); United States v. Childers, 206 Fed. Appx. 270 (4th Cir. 2006) (unpublished) (affirming denial of acceptance of responsibility based on failed drug tests even where government asked the court to award the three levels). The Court also notes that despite Petitioner's conduct which resulted in his loss of acceptance, his counsel still persuaded the Court to give Petitioner a downward variance. Thus, the Court notes that not only was Petitioner's defense

13

counsel not ineffective in failing to object to the loss of acceptance, he was able to obtain a variance from the Court resulting in a lower sentence for Petitioner.

Finally, Petitioner contends that his attorney erred by not moving to dismiss the indictment under the Speedy Trial Act. Generally, the Speedy Trial Act requires that the trial of a defendant who has been charged in an indictment shall commence within seventy days of either (1) the indictment's filing date or (2) the defendant's first arraignment before the court, whichever occurs later. See 18 U.S.C. § 3161(c)(1); see also United States v. Osteen, 254 F.3d 521, 525 (4th Cir. 2001). However, this period may be tolled for many reasons. See United States v. Hopkins, 310 F.3d 145, 149 (4th Cir. 2002). For example, the seventy-day time period is tolled following a defendant's pre-trial motion, 18 U.S.C. § 3161(h)(1)(D), or if the court grants a continuance in order to serve "the ends of justice." 18 U.S.C. § 3161(h)(7)(A). For purposes of the Speedy Trial Act, a trial normally commences with the voir dire of the jury. See United States v. A-A-A Elec. Co., 788 F.2d 242, 246 (4th Cir. 1986). Thus, a trial for purposes of the Speedy Trial Act commences on the date of jury selection.

The petitioner was initially indicted on July 28, 2009, and was arraigned on August 3, 2009. (Docs. 2, 8). On August 5, 2009, a number of pretrial motions were filed by defense counsel on Petitioner's behalf including a motion for disclosure of Rule 404(b) evidence (Doc. # 12); a motion for discovery and inspection (Doc. # 13); and a motion to disclose intention to use evidence (Doc. # 14). Generally, the Speedy Trial Act time period is tolled while a pretrial motion is pending. See 18 U.S.C. § 3161(h)(1)(D); Hopkins, 310 F.3d at 149. The petitioner has not asserted or cited any authority in support of an argument that the Speedy Trial Act was not tolled while the above-listed pretrial motions were pending.

Additionally, on September 30, 2009, a pre-trial conference was held at which the defendant requested a continuance and voluntarily waived his rights under the Speedy Trial Act. (Docs. # 25 & # 29). Another pretrial conference was scheduled for October 22, 2009, however the defendant failed to appear for this Court appearance and a Bench Warrant was issued. Defendant was thereafter arrested on November 20, 2009 and made his initial appearance on his bond violation on November 23, 2009. The time period during which defendant was absent or unavailable is excluded. See 18 U.S.C.A. q§ 3161(h)(3). A third pretrial conference was noticed for January 4, 2010. On the day of pretrial conferences, a plea agreement was filed. Petitioner entered his plea of guilty before the Court on February 10, 2010.

After a careful review of the record, the Court finds that no Speedy Trial Act violation occurred and that the performance of the petitioner's attorney did not fall below an objective standard of reasonableness in not moving to dismiss the indictment. Without a violation of the Speedy Trial Act, there was no basis for dismissing the indictment.

This Court has carefully considered each of Petitioner's grounds for relief. As previously noted, in order to prevail on a claim of ineffective assistance of counsel, a defendant must prove two things: one, that counsel's performance fell below an objective standard of reasonableness; and two, that counsel's deficiencies prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687-692, 104 S.Ct. 2052, 2063-67 (1984). A defendant asserting an ineffective assistance of counsel claim must satisfy both prongs, and a failure of proof on either prong ends the matter. U.S. v. Roane, 378 F.3d 382, 404 (4th Cir. 2004) (citing Williams v. Kelly, 816 F.2d 939, 946-47 (4th Cir.1987)). This Court is not sufficiently persuaded that Petitioner has satisfied either prong in relation to any of his asserted grounds for relief. In each instance Petitioner has made an assertion that counsel has

15

failed to do something that Petitioner feels he should have done, but he has not shown that counsel's performance fell below an objective standard of reasonableness, much less that any deficiency in counsel's representation resulted in prejudice to Petitioner.

## **CONCLUSION**

For the foregoing reasons, Petitioner's motion for relief pursuant to 28 U.S.C. § 2255 is **DENIED** (Docs. # 60 & # 81) and the Government's motion for summary judgment is **GRANTED** (Doc. # 70). This action is hereby **DISMISSED**.

The Court has reviewed this petition in accordance with Rule 11 of the Rules Governing Section 2255 Proceedings. The Court concludes that it is not appropriate to issue a certificate of appealability as to the issues raised herein. Petitioner is advised that he may seek a certificate from the Fourth Circuit Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED**.

s/Terry L. Wooten
TERRY L. WOOTEN
August 17, 2012                                  United States District Judge
Florence, SC